UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SOCORRO MORELAND,

    Plaintiff,

    v.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al.,

    Defendants.

Case No. 20-cv-04336-RS

**ORDER DENYING MOTION FOR CLASS CERTIFICATION**

I.  INTRODUCTION,

A decade ago, the California Legislature enacted new provisions in the state's Insurance Code, effective January 1, 2013, to provide certain procedural protections for the holders of life insurance policies designed to minimize the chance of policy lapse or termination from inadvertent failure to pay premiums. Under California Insurance Code sections 10113.71 and 10113.72, life insurers must provide: (1) a 60-day grace period for late premium payments, (2) sufficient notice of any missed premium and "of pending lapse and termination" prior to the effective termination date, and (3) an annual opportunity to designate additional addressees to receive notice of a potential termination of benefits for non-payment. Apparently many insurers were slow to comply fully with these new requirements. The industry initially took the position that the statutes did not apply to policies issued prior to the 2013 effective date. The California Supreme Court, however, rejected that argument. *See, McHugh v. Protective Life Insurance Co.*, 12 Cal. 5th 213 (2021).

In recent years, numerous putative class actions have been filed, many by the firm

representing plaintiff in this case, against various insurers seeking relief on behalf of policy holders and/or beneficiaries for the insurers' alleged failure to comply with the statutes prior to declaring policies lapsed or terminated. When presented with class certification motions in such cases, courts frequently rule that differences in factual circumstances among putative class members and class representatives preclude certification under one or more of the relevant criteria. In some instances, however, courts have granted certification, finding that defendants' alleged failure to comply with the statutes presents issues subject to class-wide adjudication.

Even assuming class treatment of the claims advanced here might be appropriate if brought by a plaintiff whose claims were sufficiently aligned with those of the putative class, plaintiff Socorro Moreland's motion for class certification must be denied. Moreland's own factual circumstances differ from those of the putative class members he seeks to represent to a degree that he cannot satisfy the "typicality" requirement.

## II. BACKGROUND

In 1988, when Moreland was three years old, his great-grandmother Alma Baskerville purchased a Prudential "Whole Life, Paid Up at 65" policy to insure his life.[1] The face value of the policy was $10,000 and it required $8.60 in premiums to be paid every month for 62 years. In September of 2002, Moreland's grandmother, Mary Borders, gave Prudential written notice that Baskerville had died. Borders took responsibility for the policy, requesting in writing that all future correspondence about it be directed to her address in Oakland.

For several years, notices were sent to Borders' Oakland address. In January of 2018, the premium payment was not made. Prudential sent a "Reminder of Premium Due" to Border's address the following month, indicating a grace period applied through the end of February of

---

[1] Defendants in this action are The Prudential Insurance Company of America and Pruco Life Insurance Company. The policy apparently was issued by The Prudential Insurance Company of America. The parties do not specify the role played by Pruco Life Insurance Company, and merely refer to defendants collectively as "Prudential."

United States District Court
Northern District of California

2018. Prudential then received a payment, and continued to receive payments through May of 2018.

In early June of 2018, Prudential sent Borders a "Reminder of Premium Due" that $8.60 had been due May 12, 2018. The notice advised Borders that the premium would be accepted up until the end of the month following its due date—thereby effectively providing a 49-day grace period.

No payment was made, and in mid-July of 2018, Prudential sent Borders a "Notice of Lapse." The notice provided the option to reinstate the policy "without having to answer any health questions" by paying the unpaid premium for the three missed months no later than August 6, 2018—86 days after the last previously paid day of coverage. Having received no response, on August 15, 2018, Prudential sent a "Final Notice" that the policy had lapsed, though it advised reinstatement was still available. In Prudential's record systems, the policy actually entered lapsed status on August 15, 2018.

The "Final Notice" further advised that under the contract terms selected when the policy was purchased, the cash value of the Policy was being used to purchase extended term insurance in the face amount of $16,715.83, to be effective until May 4, 2065. Thus, Moreland remained insured even after the lapse, without an obligation to continue paying premiums. The new policy, however, did not provide all of the benefits of the original as it did not accumulate cash value, and had the potential to expire before Moreland's death.

On September 11, 2018, Moreland contacted customer service at Prudential.[2] Learning that Prudential considered the policy lapsed, he provided his bank account number and authorized the payment of $34.40 that Prudential advised would reinstate the policy to its original "Whole Life,

---

[2] According to Prudential's records, this was the first contact it ever had with Moreland directly. Moreland's complaint and his declaration in support of class certification both assert he had first contacted Prudential in 2016 and submitted an address change at that time. In his deposition, however, Moreland conceded the timing alleged in the complaint was incorrect. While it may have been simple inadvertence that counsel repeated the complaint's chronology when preparing the motion for class certification, the error should have at least been acknowledged in the reply brief.

Paid Up at 65" status.

Prudential's attempt to withdraw the funds electronically from Moreland's account was unsuccessful. Prudential has offered no explanation of what efforts it may have taken, if any, to notify Moreland that there had been a problem with the electronic transaction, or to follow up on collection, as businesses often do when a customer's payment by paper check is returned by the bank unpaid. Nor does Prudential indicate it gave Moreland any other notice that the policy had not been reinstated. Moreland, in turn, does not explain why he did not or could not follow up when he realized that the payment had not been withdrawn from his account, or why he apparently did not begin making monthly payments on the policy.

Moreland filed this action nearly two years later, in June of 2020. The case was then stayed for nearly a year between October of 2020, and October of 2021, pending a decision in *McHugh*. During the discovery that followed, Prudential asserts it "uncovered" electronic records of its attempt to process the payment from Moreland's bank account in 2018. Upon review of those records, a recording of the telephone conversation in which Moreland authorized the electronic withdrawal, and Moreland's bank records confirming his account information and its balance at the time of the attempted withdrawal, Prudential determined that the electronic transfer failed as the result of an error by its own representative in entering Moreland's account number. Although there does not appear to be any reason Prudential could not have discovered its own error back in 2018 or at any time thereafter had it made sufficient efforts to do so, there is also no reason to speculate that Prudential had actual knowledge of the mistake prior to approximately September of 2022.

On September 22, 2022, Prudential sent Moreland a letter acknowledging its error and offering to reinstate the policy. Under the offer, Prudential would credit Moreland with $447.20, representing the premiums that would have been paid between the last payment made and the reinstatement date. Because under the original policy terms, dividends were automatically used to purchase "paid up additional units of insurance" ("PUAs"), Prudential further agreed to provide Moreland with "the accrued PUAs in the policy at lapse, plus any additional PUAs that would

have been credited based on declared dividends since 2018."[3] Prudential claims that under its ordinary policies and procedures it would extend the same kind of offer to any customer whose attempt to pay a premium had failed as a result of an error by a Prudential employee.

Explicitly stating he was reserving his rights and claims, Moreland accepted Prudential's offer and began making monthly payments in November of 2022. The policy has been in force under its original terms and premium payments have remained current since then.[4]

### III. LEGAL STANDARD

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure, which represents more than a mere pleading standard. To obtain class certification, plaintiffs bear the burden of showing they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule." *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Rule 23(a) provides that a court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

If all four Rule 23(a) prerequisites are satisfied, a court must also find that plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast*

---

[3] Moreland questions whether Prudential calculated the premium credit and PUAs correctly, arguing that he may be entitled to up to $17.20 in additional premium credit and possibly a few hundred additional dollars in PUAs.

[4] Moreland complains the reinstatement may have given rise to a new contestability period. Prudential represents that is not the case.

*Corp. v. Behrend*, 133 S. Ct. 1426 (2013). Rule 23(b)(3), permits certification if a court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." These requirements are often referred to as predominance and superiority. Moreland also seeks certification under Rule 23(b)(2), which applies where a defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

The class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Dukes*, 131 S. Ct. at 2551). Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

## IV. DISCUSSION

### A. Potential mootness

The parties were asked to provide supplemental briefing regarding whether Moreland's acceptance of Prudential's reinstatement offer in late 2022, mooted this action. Moreland's response adequately demonstrates dismissal of the action as moot is not warranted because Prudential's offer, and his acceptance of it, did not provide relief on his individual claims for injunctive and declaratory relief. As noted above, Moreland also questions whether he received full contractual relief, given uncertainty as to whether his premium credit and PUAs were calculated correctly.[5]

---

[5] Moreland also argued he has not received full relief under the contract if the reinstatement triggered a new contestability period. Prudential's unequivocal statement that it did not is a judicial admission sufficient to resolve that issue.

Prudential agrees that Moreland's acceptance of the reinstatement offer did not, in and of itself moot his individual claims. Prudential argues, however, that those claims are nonetheless moot because Moreland abandoned any claim for damages in his reply brief, and he lacks otherwise viable equitable claims. It may ultimately be that Moreland no longer has any viable individual claims, for some combination of reasons. Given the record and the procedural posture, however, it would be imprudent to make a conclusive determination at this juncture that Moreland's individual claims all fail as a matter of law. Dismissal of the action as moot is therefore not warranted at this juncture.

B. Policy against "picking off" class representatives

Moreland further argues that regardless of whether or not he still holds viable individual claims, case law recognizes that defendants should not be able to moot putative class actions, or prevent them from being certified, by "picking off" the named plaintiffs through attempts to make them whole with respect to their individual claims. *See*, *e.g., Chen v. Allstate Ins. Co*., 819 F.3d 1136, 1147 (9th Cir. 2016) ("[W]hen a defendant consents to judgment affording complete relief on a named plaintiff's individual claims before certification, but fails to offer complete relief on the plaintiff's class claims, a court should not enter judgment on the individual claims, over the plaintiff's objection, before the plaintiff has had a fair opportunity to move for class certification.").

It is not clear that *Chen* would control here if Prudential had made, and Moreland had accepted, an offer that inarguably provided full relief on all of Moreland's individual claims. Moreland insists *Chen* lays down a rule that a named plaintiff has a right to continue to seek class certification even if he or she has received complete relief on the individual claims. As reflected in the quotation above, however, *Chen*, was addressing only the context where a court is asked to enter judgment pursuant to a defendant's offer of judgment *over the plaintiff's objection.* Where a plaintiff voluntarily accepts an offer to be made whole on all individual claims, the concerns about defendants exercising unilateral power to "pick off" named class members is not implicated.

In any event, the record in this case does not support Moreland's characterization of Prudential's offer as a "pick-off" attempt. Prudential was willing to reinstate the policy when Moreland first contacted it back in 2018, long before Moreland ever filed suit. But for the data entry error by Prudential's employee, the policy would have been reinstated at that time and Moreland would not have had a reason to file this action, or any legal basis to do so. Had *either* Prudential or Moreland followed up when the bank transaction failed to go through, Moreland's individual situation likely would have been resolved in short order, without litigation.

Plainly it would have been in Prudential's own interest to investigate its own records when this action was first filed more thoroughly than it apparently did. Nevertheless, there is nothing to support an inference that Prudential was attempting any form of gamesmanship, or that it had actual knowledge of its employee's blunder prior to late last year. Rather, it appears Prudential promptly offered Moreland reinstatement upon realizing that its own employee caused the electronic withdrawal to be rejected.

In accepting the reinstatement offer, Moreland expressly stated he was not conceding Prudential was making the offer for any reason other than that the "policy was never legally lapsed or terminated." While Moreland is free to take that position, the record is clear that Prudential made the offer to cure its own error that caused the prior reinstatement attempt to fail, not as a remedy for the original lapse and termination that Moreland contends were illegal and ineffective. As such, these circumstances cannot be fairly described as a strategic maneuver by Prudential to moot the action or defeat class certification by "picking-off" the named plaintiff.

C.  Certification

As mentioned, numerous cases have denied class certification in cases alleging insurers failed to comply with one or more of the requirements of California Insurance Code sections 10113.71 and 10113.72. In *Siino v. Foresters Life Ins. & Annuity Co.*, 340 F.R.D. 157 (N.D. Cal. 2022), for example, the court concluded plaintiff's contention that defendant "maintained a practice of not complying with the Statutes for policies issued before the Statutes went into effect

1    in 2013" presented a common question resolvable on class-wide basis, but that class certification

2    could not be granted because plaintiff had offered no model for calculating damages on a class-

3    wide basis, thereby not satisfying the "predominance" criterion.

4         In *Nieves v. United of Omaha Life Ins. Co*., 2023 WL 2705836 (S.D. Cal. Mar. 28, 2023)

5    the court also found common questions existed, but denied certification because of a lack of

6    typicality when comparing the named plaintiff to the putative class members, and among those

7    putative class members. "

> Typicality is not met here because Plaintiff's claims will require
> individualized analysis of the terms of each class member's policy,
> [defendant's] compliance with the Statutes with respect to each class
> member's policy, and each class member's various defenses . . . .
> Additionally, Plaintiff has offered little evidence showing that she
> has sustained an injury that is typical of the class arising out of
> [defendant'] alleged noncompliance with the Statutes. Plaintiff's
> Policy, unlike most class members' policies, was reinstated.

2023 WL 2705836, at *5; *see also Pitt v. Metropolitan Tower Life Ins. Co*., 2022 WL 17972167, at *4 (S.D. Cal. Dec. 1, 2022) (finding typicality was not satisfied because "there is a lack of common evidence as to [defendant'] compliance with the Statutes, requiring individualized inquiries regarding the terms of each class policy and the timing of the notices [defendant] provided); *Poe v. Northwestern Mutual Life Insurance Co*., 2023 WL 5251875 (C.D. Cal.) (certification denied because "Plaintiff has not shown that she has sustained an injury that is typical of the class—if the class has been injured at all—arising out of Defendant's noncompliance with the Statutes" and because individualized inquires as to causation and damages defeat "predominance.")

     To be sure, there are courts who have been satisfied that actions similar to this one may properly proceed as class actions. For example, in *Small v. Allianz Life Insurance Company of North America*, Case No. 2:20-cv-01944-TJH-KES (C.D. Cal. May 23, 2023) the court dismissed concerns about typicality by noting the named plaintiff's alleged "injury and remedy do not need to be identical to all of the other class members; they only need to be similar and to stem from the

same injurious course of conduct." 2023 WL 4042593, at *2. Because the "alleged injurious course of conduct" was the defendant's failure to comply with the statutes, the court found typicality was satisfied. *Id.* Similarly, the court found "predominance" by focusing on the "central issue" of whether the defendant had a "corporate policy" to terminate life insurance policies for non-payment of premiums without first complying with the requirements of the statutes. *Id.* at *4.

Even assuming the approach to analyzing predominance and typicality taken by *Small* and other cases that have granted certification may be sound in some factual circumstances, Moreland's unique situation precludes finding typicality satisfied here. It may be true that Prudential did not comply strictly and fully with all provisions of the statutes prior to placing Moreland's policy into lapse status, declaring it terminated, and then using its cash value to purchase extended term insurance. Even before the policy was reinstated at the end of last year, however, the only reason that the policy *remained* lapsed, terminated, and replaced with term coverage, was the error by Prudential's employee in entering Moreland's bank account number. While it is certainly possible that there are some individuals among the putative class who likewise failed to obtain reinstatement of their policies only because of clerical error on Prudential's part, that is not the basis of the class definition or their claims.

Even before accepting reinstatement, Moreland was in a unique position, as he could argue he was entitled to reinstatement under Prudential's ordinary rules and procedures, whether or not his contentions about the legal effect of the statutes had merit. Now that Moreland has received reinstatement, the difference between his position and that of other putative class members is even more stark, notwithstanding his contention that he has not received his desired declaration that the lapse and termination of his policy was improper and legally ineffective from the outset.

Moreland's argument that he still has a small individual claim for damages (despite having abandoned any damage claims for the class) may support the conclusion that the case should not be dismissed as moot, but it does nothing to show his claims are typical of those of other class members. Similarly, his claims for bad faith, which also sound in damages, do not support typicality. Finally, even if Moreland wants declaratory or injunctive relief for himself as a matter

of principle, he has not shown he still has a legal basis to pursue either. At a minimum, his individual claim to such relief is subject to substantial defenses that are not common to the class. Accordingly, Moreland has failed to show certification of a class in this matter is appropriate.

## V.  CONCLUSION

The motion for class certification is denied. The parties shall appear for a further Case Management Conference on November 9, 2023, with a joint statement to be filed one week in advance.

**IT IS SO ORDERED**.

Dated: September 29, 2023

_____
RICHARD SEEBORG
Chief United States District Judge